WILLIAM McKINNEY, plaintiff in error, *v.* THE PEOPLE OF THE STATE OF ILLINOIS, defendants in error.

*Error to Rock Island.*

In a criminal case, after the caption stating the time and place of holding the Court, the record should consist of the indictment, properly indorsed, as found by the grand jury; the arraignment of the accused, and his plea; the impanneling of the traverse jury, their verdict, and the judgment of the Court. This, in general, is all that the record need state. If, during the progress of the prosecution, motions are made and overruled, the facts can be preserved by a special entry on the record, or by bills of exceptions. In one or the other of these ways, it is necessary to preserve every fact that the prisoner may deem essential to his rights, and a fair and regular trial.

If the names of the witnesses, on whose evidence an indictment is found, are not indorsed thereon, it is an irregularity which can be corrected by moving the Court to quash the indictment. If the motion is refused, the fact may be preserved by a bill of exceptions. If the fact do not appear in the bill of exceptions, the Court will presume that the witnesses' names were properly indorsed.

A prisoner, when called upon to plead to an indictment, may demand a copy of the indictment, &c., before he can be compelled to plead; and if the Court should refuse the request, it would be error, and the fact should be preserved in a bill of exceptions. But if the prisoner plead and go to trial without objection, he waives his right.

A prisoner may demand a panel of the jury, and if he object to being tried until the panel is furnished him, and the Court refuse it, it is error, and the fact should be preserved in a bill of exceptions.

A prisoner cannot complain of the appointment of a special term of Court, and of a continuance of his case from that term over a regular term, when he is not injured thereby.

The law presumes, until the contrary is shown, that the Court performs its duty; and it does not follow, because the record is silent upon a point, not necessary to be stated therein, that the Court neglected its duty. Therefore, where a record was silent as to the disposition of the jury at an adjournment of Court, and when they retired to consider of their verdict, it was not to be presumed that the Court neglected so important a duty as that of placing the jury in charge of a sworn officer.

The law in capital cases undoubtedly is, that from the commencement of the trial until the rendition of the verdict, the jury, during all the adjournments of the Court, should be placed in charge of a sworn officer, unless it is otherwise ordered by the Court, by the consent of the accused and the Attorney for the People. In civil cases, and in cases of misdemeanor, the rule is different, and the Court may exercise a discretion as to the proper disposition of the jury during the progress of the trial.

If a jury, in a capital case, separate without the consent of the prisoner, the Court should, on the fact being established, set aside the verdict, and grant a new trial, unless such separation was the result of misapprehension, accident, or mistake on the part of the jury, and under circumstances showing that such separation could by no possibility have resulted to the prejudice of the prisoner.

The common law recognizes any mode of swearing a witness, that the witness believes to be binding on his conscience. An oath administered by holding up the hand, although the Gospels were not presented to the witness, and he did not declare that he had conscientious scruples against being sworn on the Gospels, no objection being made by the prisoner at the time, was held legal and valid.

INDICTMENT for murder against the plaintiff in error and others, in the Rock Island Circuit Court, tried at the May term 1845, the Hon. Thomas C. Browne presiding. The various proceedings in the cause are fully stated in the Opinion of the Court.

*C. Gilman,* and *J. B. Wells,* appeared in behalf of the plaintiff in error in this Court, and relied, for a reversal of the judgment of the Court below, upon the following points and authorities:

I. The requirements of the statute, in reference to the preliminary proceedings in the Court below, were not complied with.

1. The record does not show that the names of the witness, or witnesses, upon whose testimony the indictment was found, were indorsed thereon. On this point, the statute is imperative. R. L. 379, § 3.

2. It does not show that the prisoner, *previous to his arraignment,* was furnished with a copy of the indictment, and a list of the jurors and witnesses. On this point, the statute is equally imperative. R. L. 212, § 170; Ib. 379, § 3; *Gardner* v. *The People,* 3 Scam. 89.

3. The cause was continued from the September special

term over the regular October term, without any order of continuance at the latter term, or taking any notice of it whatever. It is submitted whether this did not operate as a discontinuance. 1 Bovier's Law Dic. 328; 1 Tomlin's do. 408, 559; 1 Chitty's Crim. Law, 363 top paging, 643 marginal.

4. The appointment of the September special term was unauthorized by law.

II. The proceedings, after the trial was commenced, were irregular and illegal.

1. After a portion of the evidence had been heard, the Court improperly took a recess until the next morning, without making any order in relation to, or disposition of the jury. R. L. 213, §§ 178, 179; 3 Thomas' Coke, 392; *The People* v. *Meany*, 4 Johns. 294; *Numaque* v. *The People*, Bre. 11, and cases cited in the note; *The People* v. *Scates*, 3 Scam. 352; *Jones* v. *The State*, 2 Blackf. 479; *Van Doren* v. *Walker*, 2 Caines, 373; *Fink* v. *Hall*, 8 Johns. 437; *Beekman* v. *Wright*, 11 do. 442; *The People* v. *Douglass*, 4 Cowen, 26; *State* v. *Prescott*, 7 N. Hamp. 287, and the numerous cases there cited, and ably commented on; *The King* v. *Stone*, 6 T. R. 531.

2. When the jury retired to consider of their verdict, it does not appear from the record, (and therefore not to be presumed,) that they were placed in the charge of a sworn officer, as required by statute. R. L. 213, § 179.

3. The oaths administered to the jurors and witnesses in this cause, were not administered as required by the statutory or common law. The general rule of law is, that an oath shall be taken by laying the hand upon and kissing the Gospels. Every departure from this general rule constitutes an exception to it, and has been provided for by legislative enactment, in order to accommodate the conscientious scruples of the person taking the oath. The history of judicial oaths, from the earliest period, fully sustains this position. Our own statute, which is our rule, recognizes this doctrine by its peculiar phraseology, and is simply in affirmance of the common law. Its language is, "conscientious scruples about the *present* mode of administering oaths, by laying the hand

on and kissing the Gospels." The word "*present*," as here used, is synonymous with "*usual*." The person must, in the language of the statute, "declare that he or she has conscientious scruples," &c., or the oath should be administered in the "present mode." The law on this subject, from the earliest period, will be found on reference to the following authorities: Puffendorf, (folio edition,) 338, Book iv. ch. 2, § 4; Archbold's Crim. Pl. 146; Roscoe's Crim. Ev. 119; 2 Phil. Ev. (Cowen & Hill's edit.) 63; 1 Starkie's do. 23; 1 Greenl. § 371; 1 Chitty's Crim. Law, 552; R. L. 472; *Commonwealth* v. *Buzzell*, 16 Pick. 157.

III. The remaining objections are general, and grow out of the preceding.

*J. A. McDougall*, Attorney General, for the People, in reply:

The Court will presume that the prisoner was furnished with a copy of the indictment, &c., *previous* to his arraignment, the record showing that a copy was furnished.

There was no irregularity in continuing the cause over the regular term; the English rule is not in force in this State.

If there was any irregularity in administering the oaths, which we do not admit, objection should have been made by the counsel on the trial below. It is now too late to urge it. *Gill* v. *Caldwell*, Bre. 28; *Cady* v. *Norton*, 14 Pick. 236.

The general presumption of law is, that Courts do their duty; were it otherwise, there would be no safety in judicial proceedings. The rule applies in the present case. Until the contrary is shown, this Court will presume that the Court below made the proper disposition in relation to the jury, both at the time a recess was taken, and when they retired to consider of their verdict. It is not necessary that these facts should appear of record. Again, admitting that the Court did not so dispose of the jury, it is incumbent upon the prisoner to show that harm has been done, before this Court will disturb the verdict. These objections, too, should have been made at the trial; they cannot now be urged.

The cases cited from the New York Reports, were determined on applications for a new trial. The case in Indiana, so strongly relied on by the counsel for the prisoner, was based upon those decisions, which were made in civil cases and dependent upon statutory regulations. The causes originated in their inferior Courts, where no presumptions are indulged in favor of correct proceeding. The statute is the charter of their authority, and it must appear affirmatively that its requirements have been complied with. The Court is not required to see that every fact in the progress of the trial is recited upon the record. The presumption of law is, that every act, necessary and proper to be done, was done.

*J. B. Wells,* for the plaintiff in error, in conclusion:

The first and second errors assigned, are fatal. The framers of the statute had in view the necessity of the case. The prisoner should know who are his accusers, and the nature of the charge against him, before he is required to plead. These are his rights, and he cannot be presumed, in either case, to have waived them; on the contrary, he is presumed to be standing in all his rights.

As to the third error. The proceedings of the Court below operated as a discontinuance. Such is the current of English authority, and no attempt has been made to show it inapplicable to the judicial proceedings in this country.

The Court erred in appointing a special term *at* a special term. There is no warrant in the statute for such a proceeding, except under peculiar circumstances, which did not exist in this case.

The objections made under the fifth and sixth assignments of error, are insuperable. The law, as laid down in Indiana, is the only safe and correct rule. However much may be presumed in favor of Courts in civil cases, the same presumption cannot be indulged in criminal. The case in 2 Blackf. is precisely in point, and should be decisive of this cause.

The counsel for the People contends, that objections to the

mode of swearing the jurors and witnesses, should have been made by the prisoner at the trial. The prisoner surely had no control over this matter. The same may be said in regard to other points, which, he contends, should have then been made.

According to the authority of the case in the Term Reports, it should appear of record that the Court made the proper disposition of the jury, and the particular form of the entry is there given.

Where a motion for a new trial and in arrest of judgment has been made in the Court below, in the Supreme Court the whole record is thrown open to exception; and whatever appears on its face to have been irregular, may be here taken advantage of.

The Opinion of the Court was delivered by

LOCKWOOD, J.* At the October term of the Rock Island Circuit Court, in the year 1843, William McKinney was jointly indicted with George Blaylock and Isaac McKinney, for the murder of Edmund A. Philleo, and the indictment was indorsed "a true bill," and signed by the foreman, which as far as the record shows, was the only indorsement thereon. A motion was made to quash the indictment, but it does not appear that any reasons were filed, or that any disposition was made of the motion. The defendants were arraigned, and furnished with a copy of the indictment, and a list of the jurors and witnesses, and pleaded "not guilty," and at the same term a jury was impannelled, but could not agree on a verdict; and they were discharged by the consent of the prisoners and the attorney for the People. The cause was then continued to the May term 1844, when another trial was had, but the jury could not agree, and they were again discharged by like consent. The cause was then continued to a special term of said Court, appointed to be held on the second Monday of July, 1844. At this term no jury

---

* YOUNG, J., having refused an application for a writ of error and *supersedeas*, declined hearing the argument, or taking any part in the decision of the cause.

could be obtained, and the cause was again continued to a second special term, ordered to be held on the fifth Monday of September, 1844. At the September special term aforesaid, the prisoners filed their affidavit for a continuance to the May term, 1845, and the Court granted the same, and ordered the cause to be continued to that term.

At the May term 1845, a jury was impannelled for the trial of William McKinney alone, and after hearing a portion of the evidence, the Court took a recess until the next morning, when the prisoner being again brought into Court, the remainder of the evidence and arguments of counsel were heard, and the cause submitted to the jury, who retired to consider their verdict, and afterwards returned into Court with a verdict of "*guilty*" against the prisoner, William McKinney. The prisoner then entered a motion in arrest of judgment, and for a new trial, which motions were overruled, and sentence of death pronounced on the prisoner.

The following bill of exceptions appears in the record, to wit: "Be it remembered, that on the trial of this cause, and after the jury had returned into Court with their verdict, the defendant moved the Court in arrest of judgment and for a new trial, upon the following grounds, to wit: 1st. It appears by the record in this cause, that a special term was appointed for the trial of this cause, which said special term was holden on the —— Monday of ——, 1844; that this cause was continued from the said special term to this present term of said Court, a regular term of said Court having intervened between said special term and this present term, to wit, on the first Monday of October, 1844, at which said regular term no order or continuance was entered in this cause. 2d. That the indictment is defective and insufficient. And for a new trial, the defendant shows the following grounds: 1st. That it appears from the affidavit herein filed, that the oaths administered to the jurors and witnesses were not administered in conformity with the laws of this State. 2d. That the verdict is contrary to law and evidence. And also filed the affidavit of Joseph Conway, which is in these words: 'The People of the State of Illinois against William

McKinney, impleaded with George Blaylock and Isaac McKinney. May term of the Rock Island Circuit Court, A. D. 1845. Joseph Conway, being duly sworn, deposes and says, that on the trial of the above entitled cause, he was and acted as clerk of said Court; and that he swore a majority of all the jurors and witnesses sworn on the trial; that none of said jurors or witnesses were sworn by this deponent, by laying the hand on and kissing the Gospels, and that the Gospels were not presented to any one of said jurors or witnesses by this deponent; nor did any of them declare that they had conscientious scruples about that mode of administering oaths, but that most of said witnesses and of said jurors were sworn by the uplifted hand without their request, or making objection to swearing on the Gospel. Joseph Conway. Sworn and subscribed before me, this 30th May, 1845, Thomas C. Browne, Judge,' &c. And after argument and mature deliberation had, the Court overruled both said motions, and rendered judgment against defendant; whereupon the defendant by his counsel, excepts and prays this, his bill of exceptions, may be signed, sealed and made a part of the record in this cause, which is done.

Thomas C. Browne. [Seal.]"

The following errors have been assigned, to wit:

1. That it does not appear from the record in this cause, that the name of the witness or witnesses, upon whose evidence the indictment was found, were indorsed thereon.

2. That it does not appear from the record, that the defendant previous to his arraignment, was furnished with a copy of the indictment and a list of the jurors and witnesses.

3. That the cause was continued from the September special term, over the regular October term, without any order being entered thereon at said intervening term.

4. The Court erred in appointing said September special term.

5. That after the trial of the cause had been commenced and a portion of the evidence had been heard, the Court took a recess until the next morning, without making any order in relation to the jury.

6. That it does not appear from the record that when the jury retired to consider of their verdict, they were placed in charge of a sworn officer, according to the provisions of° the statute in such case made and provided.

7. That the oaths administered to the jurors and witnesses in this cause, were not administered according to law.

8. The Court erred in overruling the defendant's motion in arrest of judgment and for a new trial.

9. The Court erred in rendering a judgment against the defendant.

On the argument of this cause, numerous authorities both English and American were cited to sustain the assignment of errors.

Before entering, however, upon the discussion of the various errors relied on to reverse the judgment rendered against the prisoner, it may not be amiss to take a cursory review of the laws of England, and of this State, in relation to their respective criminal codes. The extreme technicality of the English Courts, in the administration of their criminal laws, would, to the superficial observer, have the appearance that their Courts were governed more by a desire that criminals should escape the punishment due to their crimes, than that public justice should be promoted and the guilty be brought to merited punishment.

Before coming to such a conclusion, a brief notice of the English criminal code will place the English Courts in an attitude to deserve approbation rather than censure. The English criminal laws may truly be characterised as written in blood. When Blackstone wrote his Commentaries, there were one hundred and sixty different kinds of felonies, for the commission of which the offenders expiated their crimes on the gallows. Stealing the value of one shilling was a capital offence. When the individual, accused of a capital crime, was arrested, he was, after examination and conviction by a justice of the peace, immured in a dungeon, and there remained, cut off from free intercourse with his friends, till brought into Court for arraignment and trial. On his trial for any of the numer-

ous offences denominated felony, he was not allowed the aid of counsel in his defence. He was not even allowed witnesses to prove his innocence. And when in process of time, the Courts permitted the witnesses to be heard on the part of the accused, yet they were not sworn, and the consequence was that their evidence was not considered by the jury as entitled to as much credence as the witnesses on the part of the Government. The prisoner had no right to object to the inhabitants of the county where the crime was committed, however much they might be prejudiced against him, nor could he make any objection to the Judge.

In some cases, if the prisoner refused to plead, his obstinacy was construed into a confession of guilt, and he was condemned and executed, &c. In other cases, although no sentence of guilt was pronounced against him, yet, he was condemned to the horrible death of *peine forte et dure.*

Because the prisoner was not allowed counsel in his defence, the Courts early adopted the maxim, that the Judge was counsel for the prisoner. Humane judges finding themselves thus called on to administer laws so reckless of human life, and that made so little provision for a fair trial, naturally caught at trifles to save the life of the prisoner. *In favorem vitæ* was the cause assigned for many technical rules that but for the extreme inhumanity of their laws, and the helpless condition of the prisoner would be a disgrace to an enlightened administration of justice. It is but just to add that England has within the last few years greatly ameliorated her criminal code. How stands the case in this State? By our Constitution the accused is entitled to be heard by himself and his counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his favor. He is also entitled to a speedy public trial by an impartial jury of the vicinage, and cannot be compelled to give evidence against himself. By our statute he may procure a change of venue, if he fears that the inhabitants of the county, where the offence is alleged to have been committed, are prejudiced against him; and he may also object to the Judge for the same reason.

By our criminal code, the accused is not permitted to plead guilty until the Judge has fully explained to him the consequences of such a plea, and when the prisoner refuses to plead, the law mercifully directs that a plea of "not guilty" shall be entered, and he can only be convicted by proving his guilt, in the same manner as if he had pleaded "not guilty." If the prisoner is either unable or unwilling to employ counsel, the Court invariably assign him counsel.

From this hasty comparison between the systems of criminal jurisprudence that prevail in England and in this State, it is sufficiently apparent, that persons charged with heinous crimes in the Courts of this State, occupy a very different situation from the prisoner in an English Court. Here, the accused, so far as the means of defending himself are concerned, is placed on a perfect equality with the prosecution; and there consequently can be no reason for adopting many of the technical rules that have prevailed in England, arising out of the sanguinary character of their laws and the helpless condition of the prisoner. It is a well settled maxim of the Common Law, that where the reason of a law ceases to exist, that the law itself ceases with the reason. Courts in the United States, without giving sufficient attention to this excellent maxim of the Common Law, have in too many instances, as I conceive, blindly adopted many of the technical rules of the English Courts, without considering the reasons for their adoption, and how inapplicable they are in administering laws framed in a spirit of humanity, and furnishing every aid to the prisoner to secure a fair and impartial trial. The criminal code of this State is not only framed in a very different spirit from that of England, but throughout its various provisions, it graduates punishment to the nature, aggravation, and turpitude of the offence. There are but two crimes that are made capital by our law. These are treason and wilful murder. The life of the accused is never taken, unless it clearly appears that he has wilfully and maliciously deprived a human being of life, or has been guilty of a crime, that in its consequence tends, not only to the destruction of the Government, but to cause blood to flow in torrents.

A system of criminal law thus framed ought to be admin-

istered in such a manner as to be a shield to protect the inno-
cent, and a sword to punish the guilty. These objects should
be the polar star of the Judge. Our Legislature in the crim-
inal code have set the example of dispensing with many of
the technicalities that have prevailed in the English Courts,
and this Court, for several years, has followed the example.

Keeping in view these principles, I will now proceed to
inquire, whether the prisoner has had a fair trial, according
to the well established principles of the common law regu-
lating criminal trials generally, but divested of such techni-
calities as evidently had their origin in the sanguinary nature
of the English laws, and the unprotected condition of the
prisoner.

Under the first assignment of error, it becomes important
to inquire what the record shall contain, in order to show
sufficient matter to support the judgment of the Court below.
Records from the Circuit Court frequently contain state-
ments that are clearly irrelevant, and which do not neces-
sarily constitute any part of a record correctly made out.
In a criminal case, after the caption stating the time and
place of holding the Court, the record should consist of the
indictment properly indorsed, as found by the grand jury;
the arraignment of the accused, his plea, the impannelling of
the traverse jury, their verdict, and the judgment of the
Court. This, in general, is all that the record need state.
If, during the progress of the prosecution, motions are made
and overruled, the facts can be preserved by a special entry
on the record, or by bills of exceptions. In one or the other
of these ways, it is necessary to preserve every fact that the
prisoner may deem essential to his rights, and a fair and
regular trial.

From this exposition of what should compose the record in
a criminal case, the names of the witnesses indorsed on the
back of the indictment would not appear in the record.
This Court decided in the case of *Gardner* v. *The People*,
3 Scam. 85, that "it seldom or ever happens that the names of
the foreman and witnesses are copied into the record, nor does
the statute require it; all that is necessary to appear on the

record, is, that the grand jury returned the indictment in open Court a "true bill." The indictment in this cause, having been received by the Circuit Court of Scott County and entered of record as a true bill, and neither the prisoner nor his counsel making any objections at that, or at any other time during the progress of the trial, we feel constrained in the absence of all evidence to the contrary, to give full faith and credit to the record." If the witnesses' names, on whose evidence the indictment was found, were not indorsed on the back thereof, this omission would have been an irregularity which could have been corrected by moving the Court below to quash the indictment, and if the motion had been refused, the fact should have been preserved by a bill of exceptions. As it does not appear from the record but that the names of the witnesses were indorsed on the indictment, we are bound to presume that they were. And at most the omission would only have amounted to an irregularity, which was waived by the prisoner's pleading without objection.

The second assignment of error is equally untenable. The 180th section of the criminal code requires that "every person charged with treason, murder and other felonious crimes, shall be furnished previous to his arraignment with a copy of the indictment and a list of the witnesses and jurors." When a prisoner or defendant in an indictment, is called to plead, he may, under this provision of the statute, demand a copy of the indictment, &c., before he can be compelled to plead, and if the Court should refuse this request, upon preserving the fact, it would undoubtedly be error. If, however, the prisoner plead and go to trial without objection, he waives his right. In this case, however, this assignment is not sustained by the record. The record distinctly states, that the defendants were furnished with a copy of the indictment, and list of the jurors and witnesses, before the first trial, and it was not incumbent on the prosecution, to furnish them again at the subsequent trials. All that the party would have been entitled to demand on the trial, at which his conviction took place, was a panel of the jury.

McKinney v. The People.

Had the prisoner objected to being tried until the panel was furnished him, and the Court had refused it, such refusal would have been error.

The third and fourth assignment of errors are also untenable. At the special September term no action was had that was prejudicial to the prisoner. Its appointment, therefore, did not injure him. The continuance of the case from that term over a regular term, was on the affidavit of the prisoner and at his request, and must be presumed was for his benefit. He, therefore, cannot complain.

The fifth assignment is based upon the supposition that every thing done by the Court during the progress of the trial, should be stated in the record. This, as we have seen, is not necessary. Nothing is more important in the prosecution of a criminal case, than that the witnesses against the prisoner should appear in open Court, be sworn in the presence of the prisoner, and be subjected to his cross-examination. Yet these facts are never stated on the record. It never appears from the record that any witnesses were sworn at all. The law presumes, until the contrary appears, that the Court performed its duty. It then by no means follows, because the record is silent as to the disposition of the jury, that the Judge neglected so important a duty as to keep that jury, charged with the life of the prisoner, from all extraneous influences. The law in capital cases undoubtedly is, that from the commencement of the trial until the rendition of the verdict, the jury, during all adjournments of the Courts, should be placed in charge of an officer, unless it is otherwise ordered by the Court, by the consent of the accused and the attorney for the People. In civil cases, and in cases of misdemeanor, the rule is different, and the Court may exercise a discretion as to the proper disposition of the jury during the progress of the trial. In this case, if the jury did separate without the consent of the prisoner, it was an irregularity, and the Court below would, upon the fact being established, have been bound to set aside the verdict and grant a new trial, unless such separation was the result of misapprehension, accident or mis-

take on the part of the jury, and under circumstances to show that such separation could, by no-possibility, have resulted to the prejudice of the prisoner. The prisoner was in Court with his counsel, and if the Court had permitted the jury to disperse without the consent of the prisoner, such fact being established by a bill of exceptions, would have been sufficient ground to reverse the judgment. As it is, this Court is bound to infer, either that the Court directed the jury to be kept together, or, if they dispersed, it was by consent.

The sixth assignment of error is in character similar to the fifth. It was not necessary that the record should show that an officer was sworn to take charge of the jury. It was the duty of the Court to have sent a sworn officer with the jury, and if this duty were neglected, such fact should appear from a bill of exceptions.

The seventh assignment of error, is "that the oaths administered to the jurors and witnesses, were not administered according to law." The statute relative to oaths, declares "that whenever any person shall be required to take an oath, on any lawful occasion, and such person shall declare that he has conscientious scruples about the present mode of administering oaths, by laying his hand on and kissing the Gospels, it shall be lawful for any person empowered to administer the oath, to administer it in the following form, to wit: the person swearing, shall, with his hand uplifted, *swear by the ever living God,* and shall not be compelled to lay the hand on or kiss the Gospels. And oaths so administered, shall be equally effectual, and shall subject such person to the like pains and penalties for wilful and corrupt perjury, as oaths administered in the usual form.

The common law recognizes any mode of swearing a witness that the witness believes to be binding on his conscience. The law, in requiring a witness to be sworn, has a ten fold object in view. The first and principal design is by affecting the conscience of the witness to compel him to speak the truth. And secondly, if he wilfully falsifies the truth, that he may be punished for his perjury. Both of these objects

have been secured by the oaths administered to the jurors and witnesses. The question whether an oath, administered in the manner specified in the bill of exceptions taken in this case, was legal, arose in the cause of *Gill* v. *Caldwell*, Bre. 28. In that case, this Court held, "that the man who swears by an uplifted hand, elects to do so, and the ceremony of refusing to swear upon the Testament, in the usual form is perfectly idle." The Court also directed in that case that the oath administered by holding up the hand, although no Testament was furnished and the witness did not declare that he had conscientious scruples against being sworn on the Gospels, was valid and legal. But admitting that it was irregular to swear the jury and witnesses in the mode stated in the bill of exceptions, still the swearing took place in the presence of the prisoner and his counsel, and they should have objected to it at the time. Having stood by, making no objection, it was too late to object after the verdict.

The eighth error is, that the Court erred in overruling the defendant's motion in arrest of judgment and for a new trial. The question arising under the motion in arrest of judgment, is disposed of under the third and fourth assignments of error, and the question, whether the Court below ought to have granted a new trial, is disposed of under the seventh assignment.

The ninth assignment of error is the general one, that the Court erred in rendering a judgment against the defendant. This assignment requires no remark, other than, if the special errors assigned do not show sufficient reasons for the reversal of the judgment, the judgment below is necessarily affirmed. Upon the whole, we are of opinion that it does not appear from the record, in this case, that any such errors exist in it as will justify this Court in reversing the judgment below.

In arriving at this conclusion, we are aware that there is a decision in 2 Blackf. 478, that conflicts with some of the views that have been expressed in this Opinion. In that case, the Supreme Court of Indiana held, that where "the record stated that the Court adjourned from Wednesday until Thurs-

day, but the record was silent as to what was done with the jury," that this omission was error, and the Court refused to presume, that the jury were ordered in charge of an officer. We do not disagree with the Supreme Court of Indiana, that it was necessary in the absence of consent on the part of the prisoner, that the jury should have been kept together in the charge of an officer of the Court; but we believe, that as the prisoner was in Court, in person and by his counsel, that it was his duty to object to the dispersion of the jury, if indeed they did disperse; and that in the absence of all proof to the contrary, we will presume that the Court below performed so obvious a duty. A prisoner on trial, under our laws, has no right to stand by and suffer irregular proceedings to take place, and then ask to have the proceedings reversed on error, on account of such irregularities. The law, by furnishing him with counsel to defend him, has placed him on the same platform with all other defendants, and if he neglect in proper time to insist on his rights, he waives them.

In most of the other American cases referred to on the argument, the application to correct the irregularities complained of, was made to the appropriate Court for a new trial, and were not cases in error; consequently, the positions we have laid down in this opinion do not necessarily conflict with them.

The judgment below is affirmed with costs, and the Court order that the prisoner shall be executed on the thirty first day of December, 1846, between the hours of ten and four of that day, and that this sentence shall be executed by the Sheriff of Rock Island county.*

There are some peculiar circumstances in this case which induce the Court to postpone the execution to so distant a period.

*Judgment affirmed.*

---

* Soon after the adjournment of the Court, the plaintiff in error received a full pardon from the Executive.