The People of the State of Illinois, Plaintiff-Appellee, *v.* Melvin Coleman, Defendant-Appellant.

(No. 56099;

First District—November 20, 1972.

James J. Doherty, Public Defender, of Chicago, (Saul H. Brauner and Ronald P. Katz, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Ronald F. Neville, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE EGAN delivered the opinion of the court:

The defendant was found guilty of armed robbery in a bench trial and was sentenced to the penitentiary. The only issues are the sufficiency and admissibility of the identification evidence. Before trial the defendant moved to suppress the identification testimony. By agreement the motion and trial were heard together.

The complainant, Willie McMurtry, testified that in addition to other employment he conducted his own photography business. In an attempt to obtain some business he visited an American Legion Hall in Chicago Heights at about 2:00 A.M. on March 1, 1970. He left and arrived at the American Legion Hall in Phoenix between 2:45 and 3:00 A.M. He conversed with the bartender and another man. He does not drink. Since the prospects for business were small he decided to visit a friend who lived in Phoenix. He was unsure of how to reach the friend's home and asked directions of the people in the bar. All indicated a lack of knowledge except the defendant, who was seated next to the man with whom the complainant had been conversing. The defendant told him that he used to live at that address. The complainant agreed to drive the defendant back to the hall after the defendant showed him the address. The lighting was fair but one "could see all right." He could see the defendant very well. He looked at his face and spoke to him for four or five minutes at a distance of two to three feet.

The complainant drove with the defendant in the front passenger seat. The drive took approximately six minutes. During the ride he looked at the defendant's face. After they arrived at the location they conversed for 35 to 40 minutes. The area was illuminated by a nearby street light. The defendant took out a gun, placed it in the complainant's back and after threatening to kill him took his watch, ring and about $140 in currency. The defendant then forced the complainant to flee. The complainant returned to the Legion Hall and the police were called. The defendant had on dark blue bell bottomed trousers, a blue shirt, a leather jacket or one similar to it, and a tam with a bow on the top. When he was describing the pants worn by the defendant to the police, the bartender interjected that the pants had checks in them. The defendant had a hair style similar to the one he had in court. The robber was a bit stout. He testified that he told the police the defendant had a "fuzzy chin." He did not tell the police the man had a moustache but if he did he said "very light fuzzy moustache." At the preliminary hearing he was asked if the defendant was wearing a goatee at the time and he answered: "The goatee, I wasn't certain about it, but I think he did." He identified the defendant two weeks later while the defendant was alone

in a cell. He identified the defendant in court as the man who robbed him.

James Halbert testified that he was the bartender at the Legion Hall in Phoenix. He began working about 11:00 P.M. The lighting was adequate. The defendant was present at the bar wearing a tam, light blue shirt, and plaid, checked, bluish bell bottomed pants. He conversed briefly with the defendant. The complainant, who arrived around 2:00 or 2:30 A.M., was in the Hall at the same time as the defendant. He did not have any conversation with the complainant. He did not see the complainant and the defendant leave together. He was asked if he observed any growth of hair on the defendant's face. He answered: "It looked pretty clean to me, to my knowledge." The complainant returned about 4:00 A.M. and told him he had been robbed. The description he gave of the robber matched that of the defendant. He knew the defendant and had seen him in the Legion Hall before.

Granthan Banks testified he was one of the Phoenix policemen who questioned the complainant and the bartender at the Legion Hall. They both described the man the complainant said robbed him. He knew the defendant and where he lived. He went to his house at 4:30 A.M. and was told by the defendant's stepfather he was not home. None of the property was ever recovered. A warrant was issued for the defendant.

Fred Richardson testified that he went to the Legion Hall on March 14 in the early morning hours and placed the defendant under arrest. At the station a matron called the complainant and asked him to come to the station. She was told to tell the complainant they had a man there and they wanted him to "see if he was the one involved in the robbery."

At the close of the State's case the court struck the testimony concerning the pre-trial identification but denied the motion to suppress the in-court identification.

The defendant testified that on March 1 he arrived at the Legion Hall between 10:30 P.M. and 11:00 P.M. He conversed with the bartender and had a couple of drinks with a friend of the bartender. He left the Legion Hall about 1:40 A.M. and arrived at his home two and half to three blocks away about fifteen minutes later. He had never seen the complainant on March 1 or before that date. While he was in the Legion Hall there were about 35 to 40 people present. That night he was wearing a light blue turtle neck sweater, black bell bottom slacks, a three quarter length black cashmere coat and nothing on his head. He is 5′10½″ or 5′11″ tall and weighs about 169 pounds. He denied robbing the complainant.

Initially the propriety of the trial court's determination of the admissibility of the in-court identification must be resolved.

■■ It has been consistently held that improper pre-trial identification does not necessarily vitiate an in-court identification. *People v. Martin*, 47 Ill.2d 331, 265 N.E.2d 685; *People v. Blumenshine*, 42 Ill.2d 508, 250 N.E.2d 152.

■■ In the *Martin* case the court strongly disapproved the procedure of displaying the defendant's photograph just prior to trial. Nonetheless, the court held, the question remained "whether the procedure unduly influenced the in-court identifications or whether their origins were independently based." (p. 338) Under the facts of that case, which are similar to the present one, the court upheld the in-court identification. The evidence here amply supports the trial court's determination that the in-court identification was independently based and the "glimpse" he had of the defendant in the cell did not influence his identification at the trial.

■■ The defendant further contends that the identification is vague, doubtful and uncertain. We disagree. The complaining witness was in the immediate presence of the defendant for nearly an hour. The description he gave the police was corroborated by the bartender. The defendant himself admits being on the premises on the night in question.

■■ Contrary to the defendant's argument we find no contradiction between the testimony of the complainant and the bartender regarding the pants worn by the defendant. The defendant points to an apparent discrepancy between the testimony of the complainant and that of the bartender regarding the presence of facial hair. "But precise accuracy in describing facial characteristics is unnecessary where an identification is positive." *People v. Catlett*, 48 Ill.2d 56, 268 N.E.2d 278; *People v. Miller*, 30 Ill.2d 110, 195 N.E.2d 694.

■■ It was for the trial court to weigh the testimony and determine credibility. While the defendant testified he was home at 1:55 A.M., the police officer testified that he went to his home at 4:30 A.M. and was told by his stepfather he was not there. The bartender, as well as the complainant, contradicted his testimony concerning his wearing apparel and the time he left the bar.

■■ The trial court found under this evidence that the guilt of the defendant had been proved beyond a reasonable doubt. We see no reason to conclude otherwise.

The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and BURKE, J., concur.