THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EFRAIN DELGADO, Defendant-Appellant.

(No. 56068;

First District (1st Division)—February 5, 1973.

Gerald W. Getty, Public Defender, of Chicago, (Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Terrence McQuigg, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE EGAN delivered the opinion of the court:

The defendant, Efrain Delgado, was found guilty of attempted murder and aggravated battery in a bench trial. He was sentenced to a term of four to ten years for aggravated battery and four to twelve years for attempted murder. The defendant contends on appeal: he did not knowingly and voluntarily waive his right to a jury trial; the failure to swear the interpreter constituted prejudicial error; the eyewitness identification did not establish the defendant's guilt beyond a reasonable doubt; the conviction and sentencing for two separate offenses arising from the same conduct requires a reversal of the lesser charge.

Before the trial began the following occurred:

"The Court: Both sides ready?

Mr. Wolff: The State is ready, your Honor.

The Court: A jury or a bench?

The Defendant: Bench trial.

Mr. Stearney: Bench.

Mr. Murphy: Your Honor, may we have a jury waiver, please?

The Court: Delgado, your attorney, Mr. Murphy, advises me or —what's your name?

Mr. Stearney: Stearney.

The Court: — Mr. Stearney who is about to file his appearance, advises me that you wish to waive your right to a trial by jury and submit your cause to the Court. Before permitting you to do so, it is my duty to advise you that under the law, you have a right to a jury trial. You understand you have a right to a jury trial?

The Defendant: I understand a few questions, not all of it.

The Court: You understand?

The Defendant: I understand a few questions but not all over.

The Court: Well, you are entitled to a jury trial or a bench trial. Did your lawyer explain this to you?

The Defendant: Yes.

The Court: I see. You may sign that jury waiver so we can put it in the record and submit your case to the Court without a jury.

Mr. Wolff: Does the defendant understand what a jury trial is?

The Court: Do you understand what a jury trial means, Delgado? Twelve jurors hear the case instead of me as the Judge, you understand that?

The Defendant: Yes.

The Court: All right.

The Defendant: You read that for me.

Mr. Stearney: It says that you waive your jury trial and submit the above-entitled cause to the Court. In other words, you don't want a jury to hear it but you want the Judge to hear your case.

The Defendant: Okay."

Raphael Vargas testified that on October 14, 1968, at approximately 2:00 P.M., he heard a knock on his door. When he opened the door, two men "jumped on" him. Both men had knives. At this point the defense attorney said he did not understand Mr. Vargas. The court reporter and the trial judge both indicated that they understood the testimony of the witness but the judge suggested that they get an interpreter. The defense counsel suggested that the witness speak more slowly.

Vargas testified that the men asked for his money. He identified the defendant as one of the two men. He did not know the name of the other man but the other man had been to his apartment a few minutes earlier

and they had had a conversation. There was a controversy as to what the witness had previously testified to and the Assistant State's Attorney then asked that an interpreter be used. All parties agreed in open court to proceed with an interpreter.

After the interpreter, Bartholomew Jerger, was appointed the Assistant State's Attorney asked the defense counsel, "Do you have any objection to this interpreter?" The defense counsel answered, "No, I don't."

The complaining witness was again called to the witness stand. He was not sworn again. The interpreter was not sworn, but only stated his name for the record. The witness' testimony proceeded with no objection being raised by the defense.

Vargas testified through the interpreter that he knew the defendant by the name "Pennsylvania"; the other man he described as "short" but did not know his name. He made an in-court identification of the defendant as the man known to him as "Pennsylvania." The defendant was wearing a woman's silk stocking over his head at the time of the occurrence. The lighting conditions were good; Vargas was able to see the defendant's face through the stocking.

Both men stabbed Vargas and then went toward the back of the apartment. Vargas went out the front door and down the stairs to the street. When he got out on the street a friend took him to the hospital.

While in the hospital he told the police that "Pennsylvania" had been one of the men who attacked him. He had known the defendant for ten years. The defendant came into the tavern he had owned almost everyday for a five-year period. He had never had any previous trouble with the defendant. When he returned home from the hospital he found that approximately $100 that he had kept in a china bowl in the kitchen was missing.

On cross-examination also, the witness was questioned through the interpreter. He did not remember if the defendant had a moustache or beard. He did not remember if he gave a physical description of the defendant to the police. The silk stocking did not change the defendant's appearance and the witness recognized the defendant's voice.

The defendant, Efrain Delgado, testified in his own behalf. He said that he was coming from a restaurant on his way to the poolroom located below Vargas' apartment when he saw Vargas coming down the stairs holding his stomach. He helped him into the car that took him to the hospital. He knew that Vargas lived above the poolroom but he had never been in the apartment.

At the close of the trial the defendant was found guilty of aggravated battery and attempted murder and not guilty on the armed robbery charge.

■■ The record shows substantial compliance with the requirement that the defendant understandingly waive his right to a jury trial. (Ill. Rev. Stat. 1969, ch. 38, sec. 103—6.) In addition to his own statement to the court, both lawyers representing the defendant indicated in his presence that he wished to waive a jury trial. (*People v. Sailor*, 43 Ill.2d 256, 253 N.E.2d 397.) Moreover, he was no newcomer to criminal proceedings. *People v. Richardson*, 32 Ill.2d 497, 500, 207 N.E.2d 453; *People v. Gay*, 4 Ill.App.3d 652, 281 N.E.2d 738.

■■ The defendant contends that an interpreter is a witness and as such must be sworn, citing *McKinney v. People*, 7 Ill. 540. Whether he is a witness or, as the State suggests, like a witness is not material. The fact remains he must take an oath. (Ill. Rev. Stat. 1969, ch. 51, sec. 47.) But the defendant does not address himself to the argument of the State that the defendant has waived the point now raised by failing to object at the trial.

The only cases cited by the defendant involving unsworn interpreters are *Kelly v. The State*, 96 Fla. 348, 118 So. 1 and *Commonwealth v. Corsino*, 261 Pa. 593, 104 A. 739. In the *Kelly* case the Supreme Court of Florida reversed a death sentence because the interpreters did not speak the language the defendant did. The opinion is silent on whether an objection was made. In the *Corsino* case the Supreme Court of Pennsylvania reversed because a copy of the indictment was submitted to the jury out of the presence of the defendant. One of the other grounds urged for reversal was the failure to properly swear the interpreter. The Court said: "* * * Whether [the interpreter was] properly sworn, or, if not, whether defendant can now avail himself of that fact after having used her as his own interpreter and after verdict, are questions not necessary now to determine." Neither of the cases is authority for the position of the defendant.

In *Marxauch v. U.S.*, 398 F.2d 548, (1st Cir. 1968), *cert.* den. 89 S.Ct. 454, 393 U.S. 982, 21 L.Ed.2d 443, the court of appeals said:

> "With respect to the trial itself, defendant asserts that it does not appear that the interpreter was sworn. We have recently rejected such a formal contention first made on appeal as not approaching plain error. *Defino Martone v. United States*, 1 Cir., 6/13/68, 396 F.2d 229. The circumstances here are no different."

■■ Accepting the defendant's assertion that an interpreter is a witness, the cases dealing with the failure to swear witnesses are analogous authorities for the State's position. In the case of *McKinney v. People*, 7 Ill. 540, 555, cited by the defendant, the witnesses were improperly sworn. The court said: "Having stood by, making no objection, it was too late after the verdict." This same position was taken in *People v. Krotz*, 341 Ill.

214, 172 N.E.2d 135 and *Cogswell v. Hoguet,* 40 Ill.App. 645. We adhere to that position here. Significantly, neither the defendant nor his attorneys asked that an interpreter be appointed to translate the English language to the Spanish language in order that he might better understand the proceedings. From this it may be inferred that he was able to speak English adequately. He had been in the United States for at least thirteen years before trial. It is undisputed that he spoke Spanish. He testified in English without an interpreter. There is no suggestion in the record that the interpreter did not translate correctly. The defendant may not now be heard to complain that the interpreter was not sworn.

■■■ The defendant contends that the identification was unreliable primarily because Vargas did not remember Delgado having a beard or moustache on the day of the crime. The defendant was the only person who testified that he had a beard and a moustache on that day; he also testified that on that day he had the same full beard and moustache he had at the trial. Officer Ranick testified in rebuttal that he saw the defendant five days after the occurrence, that the defendant had a moustache and a small growth on his chin and that the growth of hair on his face was "a lot more" at the trial than it was on the day he first saw him. From this evidence the trier of fact was not required to conclude that the defendant had a particularly noticeable amount of facial hair on the day Vargas was stabbed. Even if he had, the failure of Vargas to remember two and one-half years later would not necessarily render his identification worthless. Precise accuracy in describing facial characteristics is unnecessary where an identification is positive. (*People v. Catlett,* 48 Ill.2d 56, 63, 268 N.E.2d 378; *People v. Coleman* (1972), 8 Ill.App.3d 755.) In *People v. Nelson,* 127 Ill.App.2d 238, 262 N.E.2d 225, the defendant was wearing a towel mask with two burnt holes in it. The complaining witness identified the defendant, who had been his employee for three months, from his voice and walk. The court held that the identification was clear, convincing and certain. In the present case the witness had known the defendant for several years and had seen him almost everyday for five years. He recognized his voice as well as his face. The identification evidence in this case is even stronger than in the *Nelson* case.

■■ The State concedes that the defendant was improperly sentenced for two acts arising from the same conduct. Therefore, the sentence for aggravated battery is vacated.

The judgment of conviction of attempted murder and the sentence of four to twelve years in the penitentiary is affirmed.

Judgment affirmed as modified.

BURKE, P. J., and GOLDBERG, J., concur.