(No. 38063.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SAM SCOTT, Plaintiff in Error.

*Opinion filed November 30, 1967.*

WARD, J., took no part.

SIDNEY ROBIN, of Chicago, appointed by the court, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and ROBERT A. NOVELLE, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

After a bench trial in the circuit court of Cook County, a jury having been waived, the defendant, Sam Scott, was convicted of the murder of Johnnie Allen and sentenced to 30 years imprisonment. A writ of error now brings the matter before us to consider the claims of error asserted by the defendant.

The record discloses that on October 31, 1960, at about 5:30 P.M., two Chicago police officers, Hubert Mashburn and James.Teahan, proceeded to a parking lot at 3346 West Roosevelt Road in response to a call. There they found the body of Johnnie Allen, who had been shot to death. An investigation followed which led to the arrest of the defendant at approximately 7:45 P.M. the same day. Following his arrest, the defendant gave and signed two statements, both of which were introduced into evidence against him and in which the defendant admitted the shooting.

The defendant's initial contention is that the State did not prove beyond a reasonable doubt the identity of the person he allegedly murdered, though it is not disputed that the *corpus delicti* was sufficiently established. However, this contention cannot be sustained, as we find ample evidence tying the defendant to the murder of Johnnie Allen, as the indictment charged.

An identification witness, Julia Kimmons, testified that on October 31, 1960, at about 5:00 P.M. she was standing near the front window of her beauty shop at 1151 South Homan Avenue. At that time she observed two men standing outside the window, facing each other. She saw at least two flashes of light which proved to have been shots fired by the tall man, who was, she testified, the defendant. She heard no shots. The witness testified it was Halloween and that she had admitted a group of about fifteen children to her store and they were making noise. The witness then observed the defendant put an object in his pocket as he

began walking to the south toward Roosevelt Road. She saw the other man move toward an alley which was in the direction of the parking lot where the body of Johnnie Allen was found about 30 minutes later. Julia Kimmons testified further that later that day a police officer took her to the parking lot concerned and that the body she viewed there was that of the man who had been earlier with the defendant in front of her beauty shop at the time the defendant fired the shots described.

Where, as here, the *corpus delicti* has been established and only a question of identification remains, the positive and unequivocal identification by a credible witness, who had a favorable opportunity for observation, can be sufficient to support a conviction. (*People* v. *Ashley,* 18 Ill.2d 272; see also *People* v. *Jordan,* 38 Ill.2d 83.) Here, the testimony of the eyewitness was confirmed by the defendant's own testimony at trial and in his written confessions, which were introduced into evidence without objection. At trial the defendant testified he had shot Johnnie Allen twice and that the shooting occurred around 5:00 P.M., October 31, in the vicinity of the eyewitness's beauty shop.

An examination of the testimony of the defendant and his statements received into evidence discloses that he had been separated from his wife. It shows that on October 19, 1960, he had seen his wife in the company of the victim and had asked her why she didn't procure a divorce before going out with other men. The record shows that the victim then told the defendant that if he raised his hand to his wife he would never remember hitting anyone else. It discloses that he had seen the victim on three or four occasions before the killing and that the defendant had purchased the revolver concerned on the day of the killing so that he might defend himself in encounters such as he had with the victim. The revolver was identified by the defendant and was received into evidence.

It was the function of the trial court as the trier of fact here to determine the credibility of the witness and its finding of guilty will be disturbed only where the evidence is so unreasonable, improbable or unsatisfactory as to leave a reasonable doubt as to the defendant's guilt. (*People v. Washington*, 27 Ill.2d 104.) Here, no such doubt is raised.

The State did not offer any witness to present ballistic evidence at the trial, but this did not give rise to a presumption, as is suggested by the defendant, that the testimony of such witness would be unfavorable to the prosecution. (See *People v. Jones*, 30 Ill.2d 186.) An accused, of course, has the right to comment on the unexplained absence of a witness, but as we said in *People v. McElroy*, 30 Ill.2d 286, at 290, "it is fundamental that the People may accept the risk of negative inferences from the unexplained absence of a witness so long as the offense is otherwise proved." Here, the defendant's trial counsel chose not to make such a comment and in view of the defendant's testimony that he had shot the victim, the decision was readily understandable.

The defendant urges next that the trial court erred in excepting Officer Mashburn from its order which excluded witnesses from the courtroom. In *People v. Mack*, 25 Ill.2d 416, we held that it was not error for the trial judge to permit a police officer, who was to be a witness, to remain in the courtroom to assist the prosecutor. We declared at page 422 that "the defendant has no absolute right to have all witnesses excluded (*People v. Reed*, 33 Ill. 397), and that the power to exclude witnesses is within the sound discretion of the trial court. (*People v. Strader*, 23 Ill.2d 13.) It is a common practice for a trial court, in granting a motion to exclude witnesses, to except, at the request of the State's Attorney, one witness for the People, frequently, but not always, one of the arresting officers." (Accord, *People v. Miller*, 26 Ill.2d 305; *People v. Chennault*, 24 Ill.2d 185.) Excepting Officer Mashburn from the order of exclusion was not an abuse of discretion by the court.

The defendant complains, too, that the failure by the State to furnish him with counsel at the coroner's inquest and the subsequent introduction in evidence of testimony given by him at the inquest, deprived him of his right against self-incrimination.

On November 2, 1960, the defendant was called at the coroner's inquest into the death of Johnnie Allen. A deputy coroner cautioned him that "It now becomes my duty as Deputy Coroner of this County to inform you of your constitutional rights. You do not have to testify unless you so desire. But if you do testify, you do so of your own free will and accord, without any promise of any immunity or reward. What you say here may be used against you now, or at some future time." The defendant chose to testify, and at the trial Julia Kimmons and Officer Mashburn, who were present at the inquest, related in their testimony, over objections, though the defendant stated no grounds for such objections, the inculpatory statements they heard the defendant make at the inquest.

There is no contention that the defendant requested an attorney at or prior to the inquest.

We deem that our holding in *People* v. *Musil,* 37 Ill.2d 373, on facts resembling those here, is dispositive of this last complaint of the defendant.

In *Musil,* too, the defendant was cautioned by a deputy coroner to the effect that "You do not have to testify here today unless you do so of your own free will and accord without any promise of immunity or reward knowing full well that anything you may say now may be used against you at this hearing or at some future hearing." (37 Ill.2d at 377.) The defendant chose to testify and such testimony amounted to a confession of the crime. At trial the defendant denied involvement in the crime. The testimony he had given at the inquest was admitted to impeach his trial testimony. This court said in *Musil* that the deputy coroner's admonition to the defendant satisfied the conditions, de-

scribed in our decision in *People* v. *Jackson*, 23 Ill.2d 263, which must be met before testimony of the character concerned could be used against a defendant. The introduction of the impeaching material taken at the inquest was therefore held proper. The admonition given by the deputy coroner here is practically identical with the admonition which in *Musil* was held to have been sufficient. The commands of *Miranda* v. *Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, are not conceivably involved, as the trial here took place in 1961. Such commands are not retroactive in effect. (*Johnson* v. *New Jersey*, 384 U.S. 719, 16 L. Ed. 2d 882.) We deem that evidence of the statements given by the defendant at the inquest were properly received at the trial.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or . decision of this case.