(Nos. 42675, 42676, 42677 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* HERBERT CATLETT, *et al.,* Appellants.

*Opinion filed April 1, 1971.*

GERALD W. GETTY, Public Defender, of Chicago, (MARY CAHILL, SHELVIN SINGER and JAMES J. DOHERTY, Assistant Public Defenders, of counsel,) for appellants.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, ROBERT A. NOVELLE, Assistant State's Attorney, and ZENON FOROWYCZ (Graduate Law Student), of counsel,) for the People.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

In a bench trial in the circuit court of Cook County, defendants, Herbert Catlett, Albert Paden and Leroy Macklin, were convicted of the crime of armed robbery. Each defendant was sentenced to the penitentiary:—Catlett for a term of not less than three nor more than seven years; Paden for not less than two nor more than six years; and Macklin for not less than three nor more than nine years. Each defendant contends that his constitutional rights were violated in that the in-court identifications were rendered inadmissible by police arranged, unduly suggestive, pretrial confrontations, and by failure to provide them with counsel prior to such confrontations, which, they contend, were in the nature of a show-up representing a critical stage of the trial proceedings. In addition, defendant Paden contends that the evidence against him was insufficient to prove his guilt beyond a reasonable doubt.

On December 9, 1968, in the city of Chicago, the Gaylyn Pharmacy was robbed of $460 by three men later identified by all witnesses as the three defendants here charged. Sam Berke, the pharmacist, testified that he and his two employees, Robert Quirk and Susan Garber, were standing at the pharmacy counter about 40 feet from the front door when the men entered. Catlett and Macklin walked up to

him and requested a certain brand of cough syrup. When informed that he did not carry that brand, Macklin pulled a gun, stuck it in Berke's stomach and ordered him to get behind the cash register. Catlett then emptied the register. In the meantime, Paden had walked half-way back, about 20 feet from Berke, entered an opening in the counter and rifled the second cash register at the front of the store. Berke stated that he stood face to face with both Catlett and Macklin and was no more than two feet away from them during the entire robbery. He stated that he watched all three men as they walked from the front of the store towards him and also observed Paden's face through an overhead mirror at the front of the store as he walked out.

Robert Quirk related substantially the same story as Berke, adding that Catlett had pressed something to his back which he thought was a knife. He observed Paden from 20 feet away, Macklin from about four feet and Catlett from about one foot. He stated further that Macklin directed Miss Garber to a room just back of the pharmacy counter, that the robbery took four or five minutes, and that the store was well lighted with a dozen fluorescent lights. Susan Garber reiterated the testimony of the other two witnesses, adding that she too had observed all three men:—Macklin and Catlett from about two feet and Paden from 20 feet. She also watched Macklin from about three feet as he stood holding his gun in the doorway of the little room to which she had been taken.

After the robbery the police were called and each of the witnesses described the robbers. Berke testified that a few days after the robbery he identified pictures of Paden and Catlett from a stack of 10 or 12 photographs shown to him by a police officer. Not until the trial did he see the defendants in person again, and then he identified each of them positively. Quirk was also shown pictures a few days later and he identified Catlett and Paden. Quirk stated that approximately one month later he picked out Paden and

Macklin from a group of unmanacled prisoners at a hearing in the Midlothian branch of the circuit court of Cook County, Municipal District No. 6. At the trial Quirk was also positive of his identification of each of the defendants. Susan Garber testified that she was unable to identify any of the defendants from pictures shown to her shortly after the robbery, but did, however, identify Paden from other pictures shown to her subsequently. She stated that she later identified Macklin and Catlett from among the group of prisoners in the courthouse hallway. She too was positive of her identification of each of the defendants at the trial.

Officer Edward Wiley testified that the witnesses Quirk and Garber made the identifications at the court building when they looked from the court room out through a clear glass door into a corridor where prisoners were brought in, that at the time of the identifications there were several prisoners and officers in plain clothes and in uniform walking down the hall and no one was handcuffed. The officer also specifically stated that he made no suggestions whatsoever, either at the time he showed the pictures to the witnesses nor at the time the identifications were made in the corridor. He also stated that when Quirk identified the pictures of Catlett and Paden he picked them out from a stack of ten different photographs.

Officer Raymond Hartman testified that defendant Catlett appeared at his police station on January 13 stating that he came in because he heard the police were looking for him. In the presence of another officer, Hartman informed Catlett of his constitutional rights by reading to him a form prepared for that purpose and after Catlett expressed his understanding of his rights he admitted that he was involved in the Gaylyn Pharmacy robbery and that he had used a knife.

Each of the defendants took the stand in his own defense. Catlett testified that he did not know where he was on the night of the robbery, that he did go to the police

station voluntarily, but that he did not admit any part in the robbery and was not informed of his constitutional rights by officer Hartman. Macklin testified that he was home with his family on the night of the robbery. Later in the trial he stated that on the date of the robbery he had a mustache. A picture of him taken at the police station on January 2, showing him with a mustache, was admitted in evidence. Paden testified that he was home sick on the night of the robbery and that he had worn a mustache for the past two years, prior to and including the night of the robbery. A picture of Paden, taken on January 2 at the police station, was likewise introduced in evidence, showing him with a mustache. Paden's mother, father, wife, brother, sister-in-law and a friend all testified that he was home sick on the night of the robbery and that they were with him.

Defendants contend that the in-court identifications of the witnesses were improperly admitted and constitute a denial of due process because they were the product of an unduly suggestive pretrial confrontation in the nature of a show-up. In support of their argument they cite *United States v. Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926; *Gilbert v. California,* 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951; *Stovall v. Denno,* 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967 and *Foster v. California,* 394 U.S. 440, 22 L. Ed. 2d 402, 89 S. Ct. 1127. The State argues that the pretrial identification of defendants in the court building was coincidental and not a product of a show-up as proscribed by such decisions. In *People v. Martin,* 47 Ill.2d 331, we have recently held that the viewing of a defendant at a pre-trial hearing was neither improper, in the absence of any evidence of design, nor was it necessarily suggestive. In *People v. Triplett,* 46 Ill.2d 109, we stated that the ultimate question posed by the *Wade-Gilbert-Stovall* decisions was whether the in-court identifications were reliably predicated upon observations independent of the pretrial confrontations. In *People v. Eubank,* 46 Ill.2d 383,

using different language, we stated that the question to be determined is whether under all the facts and circumstances the pretrial identification was accomplished through procedures so fundamentally unfair as to deprive defendant of his constitutional rights and in this regard it must be shown by the defendant that the identification procedure employed was so conducive to misidentification as to deprive an accused of due process of law.

Applying these rules to the case before us we find no evidence whatsoever that the identification of defendants in the court building constituted a staged show-up. Each witness based his positive in-court identification upon his actual view of defendants at the scene of the robbery at which time the opportunity to observe was excellent, including the lighting and the length of time the defendants were in close proximity to the witnesses. We find that the in-court identifications of all defendants were reliably predicated upon observations independent of any pretrial confrontation and that the trial court properly admitted such evidence.

Defendants next argue that since the court building confrontation occurred approximately one month after the robbery, they necessarily constituted a line-up and the *Wade-Gilbert* rules required the presence of counsel. They express recognition of our holding in *People* v. *Palmer,* 41 Ill.2d 571 limiting such rules to post-indictment line-ups, but they urge reconsideration of that case. We do not consider this argument well taken, for as we have determined above, the confrontations in question did not constitute a line-up or show-up and the issue is not before us merely because defendants choose to label the incident as a line-up.

Next, it is argued that defendants, Catlett and Paden, were identified by highly suggestive photographic procedures which denied them due process of law. Apart from the fact that it is not entirely clear whether the witness Quirk was shown only two pictures or whether he picked

out two from a group of ten, no mention is made of the fact that both Paden and Catlett were identified by two other witnesses whose in-court identifications are not challenged on the basis of suggestive photographic procedures. Under such circumstances the complaint is without merit, for, as we have often held, the positive testimony of even one witness, if credible, is sufficient to convict. *People* v. *Martin,* 47 Ill.2d 331; *People* v. *Moore,* 42 Ill.2d 73; *People* v. *Brinkley,* 33 Ill.2d 403.

Finally, defendant Paden presents a number of points which, when considered together, he believes shows that he was not proved guilty beyond a reasonable doubt. He argues that the opportunity of the three witnesses to observe him as the third robber who came no closer to them than 20 feet was extremely scant. We cannot agree. The robbery occurred in a well lighted drug store and lasted for approximately five minutes. The robbers made no attempt to conceal their identity. Paden was observed by each of the witnesses as he walked in facing them. Berke and Quirk watched him during the robbery and Berke saw him through the overhead mirror as he walked out. The mere fact that he was 20 feet away does not of itself destroy the ability of a person to take note of his appearance so as to recognize him on another occasion. Paden argues further that no witness mentioned his mustache which he says he had worn for over two years. But precise accuracy in describing facial characteristics is unnecessary where an identification is positive. (*People* v. *Miller,* 30 Ill.2d 110.) He argues that two witnesses did not identify him at the court building though he says he was present, whereas they did pick out Macklin and Catlett. This may or may not be true, for the record is not clear as to the circumstances of his presence, nor is it clear that the witnesses had the same opportunity to view him as they did Macklin and Catlett. In any event, Paden does not contend that the third witness, Berke, missed seeing him for Berke was present, and, as stated above, the testimony of one wit-

ness, if positive and credible, is sufficient to convict and this is true even if others have failed to identify the accused. (*People* v. *Moore,* 42 Ill.2d 73.) Next, Paden argues that his alibi, that he was home sick at the time of the robbery, was fully supported by six witnesses. But there is no obligation on a trial court to believe alibi testimony over positive identification of an accused, even though the alibi testimony may be given by a greater number of witnesses. (*People* v. *Setzke,* 22 Ill.2d 582.) And from the record it is apparent that there are many discrepancies in their testimony as to times, events and circumstances which could readily cause one to question their credibility. The function of a trial court as a trier of fact is to determine the credibility of all the witnesses and the weight to be given to their testimony and its finding of guilty will be disturbed only where the evidence is so unreasonable, improbable and unsatisfactory as to leave a reasonable doubt as to defendant's guilt. (*People* v. *Scott,* 38 Ill.2d 302.) Considering all of defendant Paden's arguments as a whole we find no reason to interfere with the trial court's finding of guilty.

It is our opinion that each of the defendants herein was afforded a fair trial and that each was convicted of the crime of armed robbery beyond a reasonable doubt.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*