THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARSHALL SAUDER, Defendant-Appellant.

(No. 72-232;

Third District—March 22, 1973.

Richard Kuhlman, of Chicago, for appellant.

Edward Petka, Assistant State's Attorney, of Joliet, for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

The defendant, Marshall Sauder, an inmate of the Illinois State Penitentiary at Joliet, was charged with having murdered Duane Tucksen, another inmate, while both of them were in the prison hospital. Three other inmates testified against the defendant at his trial. The jury found him guilty, and he was sentenced by the Circuit Court of Will County, Illinois, to serve a term of from 100 to 150 years. The defendant has appealed.

The defendant claims that he was not proved guilty beyond a reasonable doubt. He argues that the testimony of the three criminals who testified against him should be accorded little credibility, because of their having been convicted of infamous crimes and because of inconsistencies and implausibilities in their stories. He argues also that prejudicial exhibits were erroneously admitted, and that a presumption in his favor should exist because of the State's failure to call any of three other witnesses who supposedly had first-hand knowledge of his guilt.

On the night of the murder the victim, Duane Tucksen, occupied a private room on the second floor of the prison hospital. He died as a

result of receiving a blow on the head evidently inflicted by a fairly heavy instrument with a sharp edge. A metal bar with blood on it was subsequently found in the second floor washroom, and bloody pajamas were discovered thereafter. At the time of the murder the defendant occupied a bed in the general dormitory ward on the second floor, and other inmates were housed on the second and third floors. At that time the door of Tucksen's room was not locked, there was no guard on his floor, and apparently any of the other inmates could have killed him.

At the defendant's trial, three other inmates of the penitentiary testified against him. One of them was Raymond Ribaudo, who had been convicted of forgery and arson. Ribaudo testified that on the night of the murder he was awakened by a scream, went to the second floor washroom, saw the defendant before a sink with blood on his pajamas, was told by the defendant to be quiet or he would get the same thing, and shortly afterwards saw the defendant walking down the hall wearing clean pajamas. The defendant questions the credibility of this testimony, pointing out that Ribaudo had tuberculosis and was prohibited from leaving his room, that he was not wearing his glasses when he went to the washroom, that he was standing more than 16 feet from whoever was in the washroom, that the light was not very bright there, that the hall was not illuminated, that Ribaudo subsequently wrote a letter to prison officials saying he didn't know anything about the murder, and that in the stories of the other witnesses the defendant did not mention meeting Ribaudo. The State replies that Ribaudo went to the washroom because he did not like to use the bucket in his room, that with limited light it was possible to distinguish between bloody and clean pajamas, that Ribaudo was frightened when he denied knowledge of the murder, and that there is no evidence that the defendant knew Ribaudo.

Another inmate testifying against the defendant was Thomas Chester Perry, who had been convicted of receiving stolen property and armed robbery. Perry testified that before the murder the defendant had showed him a metal bar that could be used to murder an inmate at the hospital, had demonstrated how it could be turned on its edge and used to hit, had said he would use it on Tucksen if he ever got the opportunity, had explained that this was to repay Tucksen for giving him a severe beating plus verbal abuse, and on five different occasions had declared his intention to kill Tucksen if he could. Perry testified, also, that after the murder the defendant confessed killing Tucksen with the aid of an inmate named Leo Lagardo, telling about the murder five different times. The defendant challenges the credibility of Perry's testimony, also, saying there was no evidence of a confidential relationship which might

explain why the defendant should confide in Perry, and that Perry's report did not in certain respects coincide with those of the other two inmates. The State responds by pointing out that a doctor's testimony corroborated the description of the victim's injuries related by the defendant to Perry.

The third inmate who testified against the defendant was Eugene "Duke" Malone, who had been convicted of rape. Malone testified that the defendant had confessed Tucksen's murder to him, also, and had told of his using a metal bar on the victim. The defendant points out to us that Malone had a particularly poor record of misbehavior in prison, and that Malone's recital of events following the murder differed in various details from the reports given by Ribaudo and Perry, such as where and in what order the defendant encountered two other inmates named Hill and Watson, and where he changed his pajamas. The State maintains that the inconsistencies were on minor points and were based on what was related to Perry and Malone at different times by the defendant, whereas there were no inconsistencies on the main points: that Tucksen was murdered, that the defendant had a motive, a plan, and an opportunity to kill Tucksen, and that the defendant afterwards confessed the killing, both to Perry and to Malone.

■■ In considering whether the State proved the defendant guilty beyond a reasonable doubt, we are guided by the rules stated by the Illinois Supreme Court in *People v. Sumner,* 43 Ill.2d 228, 232: "It is peculiarly the province of the jury to weigh the evidence, judge the credibility of witnesses and determine the facts. A reviewing court will not set aside a jury's verdict of guilty unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to cause a reasonable doubt as to the guilt of the accused." Furthermore, although each of the principal witnesses had been convicted of an infamous crime, it was said in *People v. Irvin,* 104 Ill.App.2d 316, 326: "The only effect of the prior conviction would be to permit the jury to consider that fact in determining the credibility of that witness * * *. The credibility of the witness is a matter for the jury." The inmates were certainly not disqualified as witnesses. (Ill. Rev. Stat., ch. 38, sec. 155—1.) The jury concluded that the testimony of the three inmates was credible, and accordingly found the defendant guilty. We are satisfied that the proof was sufficient to establish the defendant's guilt beyond a reasonable doubt. Two of the inmates said he confessed, and the third said he was wearing bloody pajamas. Any discrepancies between their stories were for the jury to consider in evaluating their credibility. (See *People v. Upshaw,* 58 Ill.App.2d 256, 260.) It does not appear to us that

the record contains such inconsistencies or implausibilities as to make the testimony unbelievable or to leave a reasonable doubt that the defendant was guilty of murdering Tucksen.

■■■ The defendant argues that the metal bar which was found, the bloody pajamas found, and a fragment of bone should not have been allowed in evidence. However, it appears that the reasons given on appeal for excluding these items were not the reason given to the trial court. An objection to evidence based upon a specified ground waives all grounds not specified, and a ground of objection not presented in the trial court will not be considered on review. *People v. Canaday,* 49 Ill.2d 416, 423-24.

■■■ The defendant argues also that the failure of the State to call certain key witnesses, Leo Lagardo, who supposedly helped the defendant commit the murder, and inmates Hill and Watson, who supposedly encountered the defendant immediately afterward, gave rise to an inference that their testimony would have been favorable to the defense. The State is not obligated to produce every witness to a crime, and although the failure to produce a witness may give the defendant a right to comment, it does not create a presumption that the witness's testimony would have been unfavorable to the State's case. *People v. Scott,* 38 Ill.2d 302, 306; *People v. Jones,* 30 Ill.2d 186, 190; *People v. Green,* 118 Ill.App.2d 36, 38-39.

For the reasons given, the judgment of the Circuit Court of Will County is affirmed.

Judgment affirmed.

ALLOY, P. J., and SCOTT, J., concur.