In re MIQUEL SANTIAGO et al., Minors.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. MIQUEL SANTIAGO et al., Respondents-Appellants.)

First District (1st Division)    No. 79-1420

Opinion filed August 11, 1980.

James J. Doherty, Public Defender, of Chicago (Frances Sowa, Assistant Public Defender, of counsel), for appellants Miquel Santiago and Steven Wistafke.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Pamela L. Gray, and Nancy L. Martin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Miquel Santiago, Steven Wistafke, and Robert Casillas were charged in separate delinquency petitions with murder and aggravated battery. All were found delinquent and committed to the Juvenile Division of the Illinois Department of Corrections. Santiago and Wistafke appeal. On appeal, respondents argue that they were not proved guilty beyond a reasonable doubt.

We affirm.

On June 22, 1977, an altercation occurred near the entrance of Holy Trinity High School in Chicago. Joseph Serences was fatally shot and Michael Andros received two bullet wounds in his back.

Four of the witnesses called by the State, namely Clemon Pacini, Scott Wiginton, Anthony Fiori, and Mark Pisano, were attending a summer session at Holy Trinity, which began June 20, 1977. Pacini, Wiginton, and Fiori attended the same class and testified that their classmates Casillas and Santiago had made provocative, gang-related comments to them on the first three days of class. The witnesses also testified that on June 22, 1977, Santiago obtained keys from Casillas and left the classroom at approximately 11 a.m. When the three boys left school at noon, they and several of their friends were attacked by a group of Latinos, many of whom carried bats or sticks.

Pacini testified that he observed a group of people waiting outside as he was leaving the building. Santiago, dressed in a hooded red jacket, was standing across the street. As Pacini started through the doorway, Casillas began hitting and kicking him. Although Pacini stated that he saw Santiago fighting, he testified on cross-examination that he did not see Wistafke or Santiago during the fight. He also heard shooting from two different locations.

Wiginton testified that the fighting began when Casillas struck Pacini. Shortly after the altercation began, Wiginton heard 8 to 10 gunshots and observed Wistafke firing in his direction approximately five feet away from where he later found Serences' body. Further testimony revealed that Wiginton identified Wistafke in a lineup as the person he saw firing a

gun and Casillas as one of the persons who participated in the fight. Wiginton also stated that two people were firing guns.

Peter Pup testified that on June 22, 1977, he drove to Holy Trinity High School with Mike Andros, Innocenzo Costanzo, and Joseph Serences to pick up Pacini, Wiginton and Fiori. While waiting in the parking lot across the street from the school, he observed a boy in a red jacket and pants get out of a car and place something in his belt. Pup heard approximately 10 gunshots but did not see the gunman. He identified Wistafke and Casillas as two of the boys involved in the fight but did not identify Santiago as the person with the gun.

Mark Pisano testified that after he left school on the day in question, he was walking through the parking lot and observed a boy in a red hooded sweater place a gun in his pants. He identified this boy as Miquel Santiago. Shortly thereafter, a fight erupted. Pisano heard 10 to 15 gunshots and saw Steven Wistafke firing a black revolver. Pisano also testified that he identified Wistafke in a lineup as the person who fired a black revolver and Santiago as the boy who placed the silver gun in his pants.

Innocenzo Costanzo testified that after he arrived at Holy Trinity at noon on the day in question, he saw Wistafke and Santiago near a car in the parking lot across from the school. He noticed Santiago trying to hide something in his pants. After the fight began he saw Santiago fire a silver gun.

Michael Andros testified that he saw Joe Serences fall to the ground after the first shot was fired. He later saw Santiago, dressed in a red sweatshirt, firing a silver gun. As Santiago aimed the gun at Andros, Andros tried to hide behind a car, but was shot in the back. Further testimony revealed that Andros did not inform the police of his assailant's identity.

Jack Chamness testified that he saw an individual in a red jacket run to a car and return to the fight with a knife. He also observed a person whom he identified as Steven Wistafke fire five shots from the parking lot. One of the shots hit Joseph Serences in the head. Chamness did not tell the youth officer who questioned him that he saw the gunman.

Among the witnesses called to testify on behalf of respondents were Officers Michael Pease and Thomas McCarthy, Margarita Guttierez, the girl friend of Santiago, and Martha Sanchez. Guttierez and Sanchez witnessed the altercation. Respondent Wistafke also testified.

According to the testimony of police officers, neither Wiginton nor Pisano identified the gunman in the lineup. However, McCarthy testified that his report of his conversations with the witnesses was reduced to a minimum and did not contain all the details regarding the lineup. McCarthy's partner had also prepared a report concerning the lineup

identification. This report contained information as to the identity of the gunmen.

Guttierez testified that none of the respondents had fired a gun. Although she knew who the gunman was, she did not inform the police of his identity until after she spoke with her parents and friends. Guttierez visited Martha Sanchez the day after the fight. A detective was at Sanchez' home, and Guttierez told him about the altercation on the previous day. She also gave Officer McCarthy the name of the gunman, his description, the area in which he could be located, and the school he attended.

Sanchez stated that Santiago was fighting at the time she heard the gunshots, but he did not fire a gun. She did not immediately tell police what she had seen, although she knew the gunman by name. Sanchez spoke to a detective the following day after seeking advice of others and showed the detective a picture of the gunman from a school yearbook.

Wistafke, testifying on his own behalf, denied shooting either of the victims. He testified that he went to Holy Trinity on the day of the incident because he knew there was going to be a fight and told police that he knew the name of the gunman. Wistafke was arrested after he told police that he was present at the incident.

Respondents argue that they were not proved guilty beyond a reasonable doubt. They argue that the testimony of Wiginton and Pisano regarding their identification of respondents in the lineup was discredited by the lack of such information in the police reports. They further contend that the testimony of Chamness and Andros was discredited because they failed to tell the police that they had seen the gunman during the incident. Respondents finally contend that, in light of the above, the trial court was obligated to believe the testimony of the defense witnesses.

It is the duty of the trial court sitting without a jury to determine the credibility of the witnesses and the weight to be given their testimony, and its findings should not be reversed on review unless the evidence is so unreasonable, improbable, or unsatisfactory as to leave reasonable doubt of defendant's guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513; *People v. Catlett* (1971), 48 Ill. 2d 56, 268 N.E.2d 378, citing *People v. Scott* (1967), 38 Ill. 2d 302, 231 N.E.2d 441.) Conflicts or discrepancies in testimony do not necessarily destroy its credibility, but rather affect the weight to be given the testimony by the trier of fact. *People v. Lewis* (1979), 75 Ill. App. 3d 259, 393 N.E.2d 1098; *People v. Montgomery* (1977), 51 Ill. App. 3d 324, 366 N.E.2d 623.

■■ We find ample evidence in the record which supports the trial court's finding of delinquency. Wiginton, Pisano, and Chamness testified that

they observed Wistafke firing a gun during the fight. Pisano saw Santiago place a gun in his pants, and Costanzo and Andros identified Santiago as a gunman. There was also evidence indicating that several shots were fired from separate locations from different weapons. A police report prepared shortly after the incident stated that Chamness and Costanzo identified Wistafke and Santiago in a lineup as the gunmen.

We do not believe that the discrepancies cited by the respondents render the testimony of the State's witnesses unbelievable. Although the police report from which Officer McCarthy was testifying did not mention that Wiginton and Pisano had identified respondents in a lineup, McCarthy stated that the reports did not include all the details regarding the lineup identifications and that his report only included a summary of the conversations he had with the witnesses. Another police report concerning the lineup was prepared by McCarthy's partner. This report indicated that both respondents had been identified by Wiginton and Pisano.

The failure of Chamness and Andros to immediately tell police that they had seen the gunman is a matter affecting their credibility. (See *People v. Bell* (1976), 44 Ill. App. 3d 185, 357 N.E.2d 1256, citing *People v. Henry* (1970), 47 Ill. 2d 312, 265 N.E.2d 876.) However, as noted above, the credibility of witnesses is determined by the trier of fact. Even if they were discredited we find sufficient other evidence supporting the finding of delinquency.

Moreover, the trial court had no duty to accept the testimony of Guttierez, Sanchez and Wistafke. It is well settled that the trial court is not obligated to believe alibi testimony over the positive identification of the accused. *People v. Jackson* (1973), 54 Ill. 2d 143, 295 N.E.2d 462; *People v. Catlett* (1971), 48 Ill. 2d 56, 268 N.E.2d 378.

For the foregoing reasons, we affirm the judgments of the circuit court of Cook County.

Judgments affirmed.

O'CONNOR and CAMPBELL, JJ., concur.