171 Ill. App.3d 361 (1988)
525 N.E.2d 565
In re S.M. et al., Minors (The People of the State of Illinois, Petitioner-Appellee,
v.
David McHone et al., Respondents-Appellants).
No. 2-87-0792.
Illinois Appellate Court  Second District.
Opinion filed June 24, 1988.
*362 Paul E. Gaziano and Francis M. Martinez, both of Rockford, for appellants.
Paul A. Logli, State's Attorney, of Rockford (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.
Orders affirmed.
JUSTICE INGLIS delivered the opinion of the court:
Respondents, David and Charmaine McHone (David and Charmaine or respondents), appeal the orders of the circuit court of Winnebago County finding that S.M. and B.M. were abused minors. Respondents contend that the trial court's finding of abuse is against the manifest weight of the evidence. We affirm.
S.M. is the daughter of David McHone and the stepdaughter of Charmaine McHone. She is a 15-year-old ninth grader, and a B and C student. She testified that her father had sexually abused her on two occasions. The first incident occurred when the witness was five or six years old. She was pretending to be asleep on the living room couch, clad in her nightgown and underwear. David sat down on the couch and touched her in the vaginal area with his fingers. When she rolled over as to wake up, David got up and left. S.M. testified that the second incident occurred on Sunday, March 15, 1987. She was working as a dishwasher at Sam's Pizza, and her parents would take her to and from work. On that evening, Gary Cox, a family friend, was visiting the McHones, and he and David drove S.M. to work. David alone came to pick her up from work. On the way home, he put *363 his hand inside her pants and started touching her in the vaginal area. Both were in the front seat of the car. She was wearing a seatbelt, but could not recall if her father was wearing one. The drive home took about five minutes, most of it along Hononegah Road.
S.M. further testified that as her father turned the car onto Hononegah Road, he reached over and began touching her. He told her to uncross her legs and act her age. She replied that she was acting her age but that he was not. Somewhere during the ride, her jeans became unbuttoned. She stated that her father was driving normally and that the car did not swerve. When they arrived home, she got out of the car and buttoned her jeans. Her father told her not to say anything. She did not report the incident to anyone until she told her math teacher about it on March 30, 1987. She testified that she was afraid of her father because of these incidents and tried to avoid him.
On cross-examination, S.M. admitted that she had told people she hated her stepmother. She stated that she no longer hated her stepmother. S.M. said she was angry with David and Charmaine, however, because they would not let her associate with several individuals who were all older than she. She had wanted to spend the weekend prior to March 15 with another family, but David denied permission. S.M. also mentioned an incident in which she wanted to go skating with a friend, accompanied by her friend's older brother, but her father again would not allow her to go.
She testified that the day before the second incident, March 14, she was picked up from work by David and Charmaine. She could not remember what kind of top or what kind of coat she was wearing on March 15 or whether it was snowing. She testified that when she got home that day, she found her younger sister, B.M., sleeping on the couch and brought her up to her room. She admitted that she had given a prior statement in which she said that she had found B.M. asleep in S.M.'s bed.
Cox testified that he was not at the McHone residence on March 15, 1987. He was there on Saturday, March 21, 1987, when he dropped off B.M., who had spent the night with Cox's daughter. That night he and David McHone dropped S.M. off at work, then sat around and drank several beers before Cox and his family went home.
Charmaine McHone testified as an adverse witness. She also testified that Cox was not at the McHone residence on March 15. Cox came over on March 21 to drop off B.M. She and David picked up S.M. from work that evening.
The State also called B.M. as a witness, primarily for the purpose *364 of testifying that she remembered occasions on which David alone had picked S.M. up from work.
David McHone testified on his own behalf. He stated that Cox did not visit the McHone residence on March 13, 14, or 15, 1987. That weekend, he and his wife worked on installing a new oak floor in their bedroom. Respondents introduced into evidence various receipts from materials bearing those dates. That same weekend, he and Charmaine went to dinner at a restaurant in Rockford. It snowed during the evening. S.M. went to work at Sam's, but because of the weather she stayed overnight with Pat Forrestal, a co-worker who lived above the restaurant. S.M. returned home the following morning, March 15. That evening Charmaine alone went to pick up S.M., since David had to work the following morning. The witness identified 53 pictures he had taken of Hononegah Road between his home and Sam's Pizza. The photos showed numerous ruts and potholes along the 1 1/2-mile route. He testified that on March 21, the date of Cox' visit, he and his wife picked S.M. up from work.
David also testified that he and Charmaine had been having disciplinary problems with S.M. for the past six months. She had repeatedly failed to do household chores, particularly cleaning her room. After being disciplined, she typically "stomped off" to her room. During that time, he had refused to give permission for her to do certain things or associate with certain people, in part as punishment for her failure to help around the house.
Charmaine McHone also testified that S.M. spent the night of March 14 at the home of Pat Forrestal. On March 15, Charmaine alone dropped S.M. off at work and picked her up. On March 21, she and David picked up S.M. On the last weekend of March, the family took their small cabin cruiser out of winter storage. S.M. helped the family clean the boat and did not seem fearful of her father. That weekend Charmaine took S.M. to work, but she was returned home by a co-worker, Kelly Richardson.
Pat Forrestal testified and confirmed that S.M. had spent the night of March 14 at her home. The final witness was Thomas Anderson, a co-worker of David's. He testified that he stopped by the McHone home during the final weekend of March 1987. He saw S.M. helping the family clean the boat. He thought she appeared normal and did not seem to be afraid of her father.
Following argument, the court found S.M. and B.M. to be abused minors. Although there was no evidence that B.M. had actually been touched, the court stated that "historically when the primary target is removed from the home some other child becomes the primary target." *365 The court named the Department of Children and Family Services legal custodian and legal guardian of S.M. David retained legal custody of B.M. Respondents appeal.
Respondents contend that the court's decision was against the manifest weight of the evidence. They point to numerous inconsistencies in S.M.'s testimony and contend that other elements are improbable. They point out that S.M. testified that the date of the second incident was Sunday, March 15, and that it was the day that Cox came over. Yet Cox himself testified that he was at the McHone home on March 21, but not March 15. Furthermore, Charmaine testified that she and David both picked up S.M. on March 21. The next day, March 22, Charmaine alone picked up S.M.
Respondents also point to David's photographs showing the deteriorated condition of Hononegah Road and argue that he could not have been driving normally, as S.M. testified, while steering with one hand and reaching across the seat to touch S.M. with the other hand. They also point to other inconsistencies in S.M.'s testimony, such as her confusion about whether she found her sister on the couch or asleep in her bed. Finally, respondents contend that their evidence established that S.M. had a motive to lie, since she was upset about respondents' strict discipline, and allegedly made up the story to "punish" respondents and remove herself from the strict environment.
The trial court acknowledged the flaws in the State's case, including the inconsistencies in S.M.'s testimony and the fact that the math teacher and a police officer to whom S.M. allegedly told her story were never called to corroborate the complaint. Nonetheless, the court found her a credible witness, finding that her testimony was clear and consistent as to the details of the acts of abuse. Furthermore, the court noted that the parents had an even greater motive to fabricate testimony, as they faced the prospect of losing two of their children.
 1 A trial court's finding of abuse is entitled to great deference and weight. (In re T.H. (1986), 148 Ill. App.3d 877, 882.) The court, having observed the witnesses and heard their testimony, is in a superior position to determine their credibility than is an appellate court. (In re Brown (1981), 86 Ill.2d 147, 152; In re Brooks (1978), 63 Ill. App.3d 328, 337.) As in other civil cases, the standard of proof is a preponderance of the evidence, and the court's judgment will not be disturbed unless it is contrary to the manifest weight of the evidence. (Ill. Rev. Stat. 1985, ch. 37, par. 704-6(1); In re Simmons (1984), 127 Ill. App.3d 943, 948.) Conflicts or discrepancies in a minor's testimony do not necessarily destroy its credibility, but only affect the *366 weight to be given that evidence. In re Santiago (1980), 87 Ill. App.3d 605, 608; see also In re A.M.C. (1986), 148 Ill. App.3d 775, 779.
 2 In the instant case, the court acknowledged the inconsistencies in the minor's testimony and the lack of corroboration, yet found her to be a credible witness. In In re T.H. (1986), 148 Ill. App.3d 877, 882-83, the appellate court upheld the trial court's finding of abuse despite internal inconsistencies in the children's testimony and a lack of corroborating evidence by the State. Similarly, in the instant case, the court found the minor a credible witness and entered a finding of abuse, and that finding was not against the manifest weight of the evidence.
 3 Respondents also argue, without citation of authority, that the court erred in entering a finding of abuse as to B.M. in the absence of evidence that she was physically molested. The Juvenile Court Act specifically provides that evidence of abuse of one minor is admissible evidence on the issue of the abuse of any other minor for whom the parent is responsible. (Ill. Rev. Stat. 1985, ch. 37, par. 704-6(3); In re Brooks, 63 Ill. App.3d at 339.) The court did not err in entering a finding of abuse as to B.M. as well.
For the foregoing reasons, the judgments of the circuit court finding both minors to be abused minors are affirmed.
Affirmed.
DUNN and WOODWARD, JJ., concur.